[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
Facts:
This case arises from a motion to modify custody and support filed by plaintiff mother.
After a full hearing, the court, based upon a preponderance of the credible, relevant and legally admissible evidence, finds as follows:
A. Motion to Modify
The parents have joint custody of their three minor children, Merissa, who will be 15 in March, Tarah who is 12 and John who just turned ten. Father has physical custody.
Father urges the court to reject plaintiff mother's motion to modify custody. He claims no substantial change of circumstances exist.
First, the changes are many and substantial:
The July 29, 1994 dissolution of their marriage, incorporating the written agreement of the parties, granted the joint custody of the minor children and the primary residential CT Page 1857 role to the father. Both parents have since remarried.
One child, John, has become outspoken in his wish to reside with his mother.
Father, entrusted with primary residence, immediately and unilaterally modified the joint custodial agreement, by effectively changing it to his own sole custody. The judgment, incorporating their agreement, assured each of the parents that they would share educational and medical access and information. They defined joint custody, in part, in paragraph 1 of the July 29, 1994 judgment as:
 "Both parties shall have access to all school and medical records and information and activities, and all educational decisions will be discussed and agreed upon by the parties."
Father consistently denied mother a role in educational and medical issues from the date of dissolution. He did not disclose the childrens' educational appointments or activities. He did not share the names of their medical or dental practitioners, nor was mother informed of the dates or purposes of their medical or dental appointments.
Since the date of the judgment, conflict over the upbringing of the children has increased. Mother has made some contribution to that conflict, but it has been father who has been the major factor in creating the increasing parental discord.
Second, given young John Mastropiero's acute discomfort with father's physical custodianship as well as Merissa's periodic ambivalence, it becomes appropriate to examine whether the custody order now in effect reflects the best interests of the children.
Finally, paragraph 5 of the Judgment contemplates a future change in the primary residence of the children, a change plaintiff mother now wishes to explore. The divorce judgment adopted the joint custody agreement of the parties. The fifth paragraph was clearly intended to afford a cautious mother the opportunity to reconsider awarding her former husband joint and primary physical custody should future events prove it appropriate. Its tone could well be read to suggest an almost exploratory primary residence. CT Page 1858
 "5. The Defendant shall be responsible for the full support for the minor children, for so long as the children maintain primary residence with the Defendant. Thereafter, the custodial parent with whom the children reside shall be free to seek child support contributions for the benefit of the minor children from the other parent."
The post judgment custodial history substantiates mother's early concern.
Discussion: B. Jehovah's Witness
The behaviors required by father's commitment to raise the children as Jehovah's Witnesses have been offered as a basis for denying father custody of the children. Such a denial would violate father's right to religious freedom under the First Amendment. It is a fundamental law of our land that a parent may not be deprived of a child's custody based upon religious beliefs. Our constitution forbids this court to evaluate the merits of father's religious practices. Garrett v. Garrett (1995)3 Neb. App. 384, DeLuca v. DeLuca (1994, 2d Dept) 609 N.Y.S.2d 80,Gago v. Acevedo (1995, App. Div., 2 Dept) 625 N.Y.S.2d 250.
Further, the Jehovah's Witness religion, as practiced by father, is not a threat to the well being of the Mastropiero children. The children will be limited in some activities that may be seen as valuable in the social development of children. They will not celebrate birthdays or some widely observed holidays. They will not recite the pledge of allegiance nor salute the flag. They will not participate in many group extracurricular activities. They are less likely to attend four years of college. They will not be allowed blood transfusions. They will be expected to spend many hours calling door to door to present their Jehovah's Witness beliefs. But this court has been offered no expert testimony that these religiously based variations from communal norms threaten the childrens' best interests. Nor was any credible evidence presented to indicate that the children were accident prone or afflicted with health problems that were likely to necessitate blood transfusions. . . .
C. Secular Behavior
. . . As the result of the parties' testimony, the court gained insight into the values and behaviors of both mother and father. The court appointed independent evaluator, Dr. Kathleen CT Page 1859 Sterner, added additional insights. It is clear that the parents' conflicting religious beliefs were not the sole motivating factors in their dispute. Both parties expressed themselves in religious terms and cited religious doctrine, but they have both been concerned with the same personal issues that motivate other divorcing spouses: personal power, parental alienation, control, parenting styles, reaction the rejection implicit in divorce, inability to communicate, is comfort with therapeutic intervention and inability, or refusal, to jointly parent.
Dr. Sterner testified that when the children participate in father's religion, it validates father and suggests to him that mother's rejection of father and his religion was in error. Attorney Jennifer Davis, counsel for the minor children insightfully sees it as, "The children's involvement in father's religion eases some of the hurt of mother's rejection."
Father has consistently and repeatedly refused to disclose the minor childrens' doctor and school appointments to their joint custodial mother. He refused to give mother the childrens' medical insurance cards until pressured by this court, making it impossible for their joint custodial mother to initiate medical care without father's specific approval. He placed lengthy and repeated telephone calls when the children vacationed with their mother. He challenged mother's authority with the children by arbitrarily scheduling religious activities for the children while they vacationed with her, thus interfering with mother's own scheduling choices. He altered the terms of the childrens' school medical releases, eliminating mother's joint custodial role.
None of these inappropriate behavior patterns of father have a solely religious foundation. They involve power, control and other petty custodial dispute behavior patterns well known to this court in cases without religious issues. Religious differences, protected by the First Amendment, do not confer immunity from secular improprieties.
Father has had an extended opportunity to demonstrate his appropriateness as a primary residential parent. He has failed
D. The Belangers and Mastropieros
Plaintiff mother, and her new husband, Gerard Belanger, are a warm and comforting couple. Dr. Sterner finds them to have CT Page 1860 stronger nurturing capacities than father and his young wife. . . . The children have high regard for Gerard Belanger. Robin Mastropiero is not entirely comfortable in her role as step-parent and does not involve herself in some major child issues.
E. Merissa, Tarah and John Mastropiero
All three of the children are troubled by their parents' ongoing conflict. Each of the children require a stability they have not yet achieved.
. . . When questioned about her living preferences, Merissa vacillates. She does not care where she lives; she prefers to live with her father; she would rather live with her mother. . . . [Tarah] . . . prefers to live with her father, enjoys Gerard Belanger and gets along well with her stepmother. . . . John wants to live with his mother. . .
F. Children, Control and Credibility
. . . Father is controlling. He has limited mother's participation as a joint custodial parent by limiting her decision making powers. When his judgment was questioned, he refused to discuss mother's contrary opinions.
Plaintiff mother is less controlling. And more credible. Father was an evasive and argumentative witness who repeatedly chose replies that were adversarially advantageous or that masked his intentions with ambiguity. His testimony was not credible, particularly his representations that the children were free to make their own choices while under his roof. . . .
Orders: Having reviewed the evidence and the sworn financial affidavits of each of the parties in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, the following orders shall enter:
1. Custody
a. The parties shall continue to share joint custody of the three minor children.
b. All issues involving the children, including, but not limited to educational paths, career choices, medical care and CT Page 1861 extra curricular activities are to be discussed by the parents and all relevant information shall be openly and fully revealed Neither party shall withhold any information, nor permit any other person or institution, to do so.
c. If the parents are unable to reach an agreement after discussing any disputed issue, plaintiff mother's decision shall be final and binding. The children's religious practices and religious choices however, are to continue to be made by the children themselves. Neither parent may interfere with the childrens' religious choices.
2. Primary Residence
The primary residence of the three minor children shall be with plaintiff mother. . . .
7. Medical Insurance
a. The parents shall review the coverage of their respective medical insurance policies and the children will be covered by that parent with the most complete coverage. . . .
Steinberg, J.